# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MANUEL GARCIA,

     Plaintiff,

v.

ANDREW SAUL,
Acting Commissioner of
Social Security Administration,

     Defendant.

Case No.: 2:18-cv-02226-WGC

**Order**

Re: ECF Nos. 19, 20

Before the court is Plaintiff's Motion for Reversal and/or Remand. (ECF No. 19.) The Commissioner filed a Cross-Motion to Affirm and Opposition to Plaintiff's motion. (ECF Nos. 20, 21.) When Plaintiff filed this action the Acting Commissioner of the Social Security Administration was Nancy Berryhill. The current Acting Commissioner is Andrew Saul, and the caption reflects this change.

This action was originally assigned to District Judge James C. Mahan and Magistrate Judge George Foley, Jr. After the filing of the motions, due to Magistrate Judge Foley's retirement, the action was reassigned to Magistrate Judge Elayna J. Youchah on August 8, 2019. On October 16, 2019, the case was reassigned to the undersigned as magistrate judge. Following the consent of the parties, on January 23, 2020, the case was assigned to the undersigned for all purposes.

After a thorough review, Plaintiff's motion is granted, the Acting Commissioner's cross-motion to affirm is denied, and this matter is remanded for the calculation and award of benefits.

# I. BACKGROUND

On April 26, 2015, Plaintiff protectively completed an application for disability insurance benefits (DIB) under Title II of the Social Security Act, alleging disability beginning September 1, 2012. (Administrative Record (AR) 173-174.) The application was denied initially and on reconsideration. (AR 82-86, 92-96.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 97-98.) ALJ Cynthia Hoover held a hearing on June 8, 2017. (AR 30-46.) Plaintiff, who was represented by counsel, appeared and testified on his own behalf at the hearing. Testimony was also taken from a vocational expert (VE). On November 1, 2017, the ALJ issued a decision finding Plaintiff not disabled. (AR 13-25.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Commissioner. (AR 1-3.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff argues that the ALJ failed to articulate specific and legitimate reasons supported by substantial evidence for rejecting the two-hour stand/walk limitation assessed by examining physician, Adrian Adrian, M.D. The Acting Commissioner, on the other hand, argues that the ALJ appropriately discounted the two-hour stand/walk limitation.

# II. STANDARDS

## A. Disability Process

After a claimant files an application for disability benefits, a disability examiner at the state Disability Determination agency, working with a doctor(s), makes the initial decision on the claimant's application. *See* 20 C.F.R. §§ 404.900(a)(1); 416.1400(a)(1). If the agency denies the claim initially, the claimant may request reconsideration of the denial, and the case is sent to a different disability examiner for a new decision. *See* 20 C.F.R. §§ 404.900(a)(2), 416.1400(a)(2).

If the agency denies the claim on reconsideration, the claimant may request a hearing and the case is sent to an ALJ who works for the Social Security Administration. *See* 20 C.F.R. §§ 404.900(a)(3), 416.1400(a)(3). The ALJ issues a written decision after the hearing. *See* 20 C.F.R. § 404.900(a)(3). If the ALJ denies the claim, the claimant may request review by the Appeals Council. *See* 20 C.F.R. §§ 404.900(a)(4), 416.1400(a)(4). If the Appeals Council determines there is merit to the claim, it generally remands the case to the ALJ for a new hearing. If the Appeals Council denies review, the claimant can file an action in the United States District Court. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).

**B. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairment(s) are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment(s) that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231

(9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and 416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a VE or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). [1]

---

[1] The Grids contain various combinations of factors that direct a finding of disabled or not disabled.

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**C. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper

legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements through December 31, 2018, and had not engaged in substantial gainful activity since the alleged onset date of September 1, 2012. (AR 18.)

At step two, the ALJ concluded Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine. (AR 18.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 19-20.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform light work, except: he is able to occasionally climb ladders, scaffolds, ropes, stairs and ramps, balance, stoop, kneel, crouch and crawl; he needs to avoid extreme heat, wetness, vibration and hazards such as moving machinery and heights; and, he needs to avoid walking on uneven surfaces. (AR 20.)

The ALJ then concluded Plaintiff was able to perform his past relevant work as a blackjack dealer. (AR 23-24.) The ALJ made an alternative finding at step five that there were other jobs that exist in significant numbers in the national economy that Plaintiff can also perform. (AR 24.)

As a result, the ALJ found Plaintiff not disabled from September 1, 2012, through the date of the decision. (AR 25.)

**B. Two-Hour Standing/Walking Limitation of Dr. Adrian**

    **1. Standard for Consideration of Medical Opinion Evidence**

        "Courts 'distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physician); and (3) those who neither examine nor treat the claimant (nonexamining physicians).'" *Garrison*, 759 F.3d at 1012 (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).

        The Social Security Administration amended its regulations regarding the evaluation of medical evidence for claims filed on or after March 27, 2017, so that there is no longer a hierarchy for treating, examining or non-examining sources for those cases. *See* 20 C.F.R. § 404.1520c(a), 416.920c(a). This claim was filed before March 27, 2017; therefore, the new regulations are not applicable. For claims filed before March 27, 2017, 20 C.F.R. §§ 404.1527 and 416.927 govern how an ALJ must weigh medical evidence. Those regulations afford "treating sources" controlling weight in certain circumstances. *See also* Social Security Ruling (SSR) 96-2p, 1996 WL 374188 (July 2, 1996).[2] Even when the treating sources are not given controlling weight, they are still entitled to deference. *Id*.

        The Ninth Circuit has similarly held that "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted).

---

[2] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, in the Ninth Circuit they are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

"[T]he opinion of a treating physician is thus entitled to greater weight than that of an examining physician, [and] the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Id*. (citation omitted). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be] given controlling weight." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (citation and quotation marks omitted); *see also Revels v. Berryhill*, 874 F.3d 648, 854 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)). "The weight afforded a non-examining physician's testimony depends on the degree to which [he or she] provide[s] supporting explanations for [his or her] opinions." *Garrison*, 759 F.3d at 1012 (citation and quotation marks omitted).

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). To reject a treating or examining doctor's opinion that is contradicted by another doctor's opinion, the ALJ must "provid[e] specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (citation and quotation marks omitted).

**2. Dr. Adrian's Opinion**

Dr. Adrian conducted an internal medicine consultative examination of Plaintiff on August 20, 2015. (AR 321-328.) Dr. Adrian noted that Plaintiff was a 50-year-old male with a history of multiple sclerosis (MS) who complained of low back pain, restless leg syndrome and right calf burning, poor balance, and somewhat diminished sensation in the left lower extremity below the knee. (AR 322.) Dr. Adrian indicated that Plaintiff's movements around the office, and gait, were somewhat slow, but he did not use an assistive device. He could sit comfortably without

shifting in his chair, and had mild difficulty moving from the prone position to sitting and from sitting to standing. (AR 324.) He had good muscle tone with good range of motion of all major joints. There was no deformity in the back, and no CVA tenderness. The bilateral straight leg test was negative. He had no clubbing, cyanosis or edema in the extremities. There was no evidence of tenderness over the midline or paraspinal areas and range of motion was within normal limits. The straight leg test was negative bilaterally. He had 5/5 strength in the upper and lower extremities bilaterally. His sensory exam was normal. His reflexes were normal. He did not become unbalanced by bending or twisting, but as noted above, his gait was somewhat slow. He was assessed with MS and degenerative disc disease at L5-S1 with disc narrowing and some degenerative end plate without canal stenosis. (AR 325-26.)

As is relevant to this Order, in his functional assessment, Dr. Adrian opined that Plaintiff could stand/walk two hours in an eight-hour workday. (AR 327.)

**3. ALJ's Reasons for Discounting Dr. Adrian's Opinion**

The ALJ summarized Dr. Adrian's findings and opinions, and then concluded that the objective findings in the record did not support Dr. Adrian's opinion that Plaintiff was able to stand/walk for two hours in an eight-hour workday. The ALJ stated that the record, including Dr. Adrian's own examination notes, revealed stable objective findings such as 5/5 motor strength throughout, normal muscle tone, good range of motion in his joints, and intact motor and sensation. (AR 22.)

**4. Analysis**

First, the court points out that the ALJ also acknowledged the opinions of the State agency medical consultants: Dr. Nalini Tella and Drs. Susan Rosamond and Leslie E. Arnold. Dr. Nalini Tella concluded in April of 2013 that Plaintiff also could stand/walk for only two hours out of an

10

eight-hour workday. Drs. Rosamond and Arnold both concluded Plaintiff could perform work at the light exertional level, which would be consistent with the ultimate RFC adopted by the ALJ that he could stand/walk up to six hours in an eight-hour day. *See* SSR 83-10, 1983 WL 31251 ("the full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday.") The ALJ rejected Dr. Tella's opinion that Plaintiff could only stand/walk for two hours, finding it was inconsistent with the longitudinal record. (AR 23.)

Since there is a contradiction between the opinion of Dr. Adrian (and Dr. Tella) and Drs. Rosamond and Arnold with respect to Plaintiff's ability to stand/walk in a workday, the ALJ was required to set forth specific and legitimate reasons supported by substantial evidence in the record in order to reject Dr. Adrian's opinion on this issue.

The ALJ's basis for rejecting this opinion was that the objective findings in the record did not support that opinion. The ALJ stated that the record, including Dr. Adrian's own clinical notes, revealed stable objective findings such as 5/5 motor strength throughout, normal muscle tone, good range of motion in his joints, and intact motor and sensation. (AR 22.)

The court must determine whether the ALJ's reasoning is supported by the objective evidence in the record. It is true that Dr. Adrian found that Plaintiff's range of motion was normal, and he had 5/5 motor strength in the upper and lower extremities bilaterally, and 5/5 on his sensory exam. Dr. Adrian did note that Plaintiff complained of restless leg syndrome, right calf burning, poor balance and somewhat diminished sensation in the left lower extremity below the knee. His gait was somewhat slow, although he did not use an assistive device. He had mild difficulty moving from prone to sitting and from sitting to standing.

If the record were just limited to Dr. Adrian's clinical notes, the court might agree with the ALJ that they did not support a finding of a two-hour stand/walk limitation where the only relevant

clinical findings Dr. Adrian noted were a somewhat slow gait and mild difficulty moving from the prone position to sitting and from sitting to stand. The court is required, however, to look at the longitudinal record. This is both because the court must do so to determine whether an ALJ's reasoning is supported by substantial evidence, but also because the Acting Commissioner specifically argues here that the longitudinal record does not support a two-hour stand/walk limitation.

Plaintiff has multiple sclerosis and degenerative disc disease of the cervical and lumbar spine. The medical records span from October of 2014 through April of 2017. Plaintiff consistently complained of neck and low back pain with some pain radiating to the thigh; numbness in his toes, feet and legs; weakness in both legs; muscle spasm; and balance issues (though he denied falls), dizziness, gait imbalance; and, fatigue. On December 5, 2014, when he saw his neurologist, Dr. Edgar Evangelista, he also exhibited normal range of motion and 5/5 strength all over. Nevertheless, Dr. Evangelista assessed him as having, among other things, abnormality in his gait and generalized muscle weakness. (AR 308.) His primary care provider, Ma Francesca Chamian, M.D., noted decreased range of motion in his back with flexion and extension. She also assessed low back pain, dizziness, numbness and leg pain, among other issues. (AR 277.)

While his MRI results of the cervical spine between January 9, 2015, March 18, 2016, and April 23, 2017, remained stable, the findings themselves are significant as they demonstrate multiple areas of increased signal with intensity in the cord, cervical spondylosis, multilevel degenerative changes, degenerative disc changes, disc space narrowing and disc osteophyte complexes, central canal narrowing with foraminal narrowing at multiple levels. (AR 271-72, 390, 372-74.)

An EMG on January 28, 2015, showed evidence of mild right sensory, demyelinating median mononeuropathy. (AR 302.) Again, his muscle bulk and tone and motor strength were normal, but he had decreased sensory findings in both feet. (AR 303.) At that time Dr. Evangelista told him to do activity as tolerated, but he should avoid stress or pressure on the spine, and *he should avoid prolonged* sitting, *standing* and frequent bending/pushing/pulling. (AR 304.)

On February 25, 2016, he had lumbar paraspinal tenderness and spasm, though his still had full range of motion and 5/5 strength throughout. He was assessed with MS, *leg weakness, muscle spam, ataxic gait*[3], paresthesia of the skin, and fatigue. He was put on Baclofen and Gabapentin in addition to his MS injections. (AR 375-76.) An MRI of the lumbar spine on March 21, 2016 showed degenerative changes, greatest at L5-S1. (AR 390.) On March 29, 2016, Dr. Evangelista noted that Plaintiff's complaints of low back pain and balance issues remained unchanged. He also reported constant numbness and cold sensation in his feet. While he had full range of motion and strength on examination, Dr. Evangelista still assessed him with MS, *ataxia,* fatigue, and myelopathy. With respect to the ataxia, he was advised and instructed regarding fall precautions and risks, and was instructed to *exercise caution with ambulation and postural/body position changes*. (AR 378-379.)

On April 29, 2016, Plaintiff saw Dr. Evangelista and indicated he still had numbness and tingling in his toes, as well as a lot of fatigue. While there was full range of motion, he did have decreased motor strength in hip flexion with mild leg spasticity. He was assessed with MS, vitamin D deficiency, chronic fatigue and *muscle spasm of the calf*. He was advised to refrain from heavy

---

[3] "Ataxia is typically defined as the presence of abnormal, uncoordinated movements….An unsteady, staggering gait is described as an ataxic gait because walking is uncoordinated and appears to be 'not ordered.'" *See* hopkinsmedicine.org/neurology_neurosurgery/centers_clinics/ataxia/conditions/, last visited March 12, 2020.

lifting and other stress/strain on the cervical and lumbar region. (AR 381-82.) On October 7, 2016, Plaintiff complained to Dr. Evangelista of weakness in the legs bilaterally, starting at the thighs and radiating down to the calves, as well as tingling in his toes, and some experience of electric shock feeling. He was compliant with his medications with no relief. Again, he had full range of motion, and motor strength except with respect to left hip flexion. Dr. Evangelista noted that he had an *ataxic gait*. He was assessed with MS, *ataxic gait, fatigue, leg weakness, muscle spasm*, and lumbar degenerative disease. He was again cautioned not to put stress/strain on the cervical or lumbar region and fall risk/avoidance was discussed. (AR 384-86.)

On March 7, 2017, Plaintiff complained he had been more tired that usual, and had bilateral leg weakness and felt off balance at times, though he denied falling. While he previously had numbness in the tips of his toes, it had extended to the entire toe. He was also starting to have weakness in both arms. Dr. Evangelista commented that he had *ataxia of the lower limbs and unsteadiness when walking* with a wide based gait. On examination he still had full range of motion and motor strength except with left hip flexion. Dr. Evangelista assessed him with MS, *ataxic gait, fatigue, leg weakness, muscle spasm* and lumbar degenerative disease. (AR 387-88.)

After reviewing the relevant medical evidence in the record, the court finds that the ALJ's reason for discounting Dr. Adrian's opinion that Plaintiff can only stand/walk for two hours in an eight-hour workday is not supported by substantial evidence in the record. This is an individual with a demonstrated diagnoses of MS, with consistent complaints of neck and back pain with some pain radiating to the lower extremities, numbness and weakness in the lower extremities, muscle spasm, fatigue, dizziness and balance issues. His neurologist examined him and assessed him as having leg and muscle weakness, muscle spasm in the calf, fatigue, myelopathy, as well as an abnormal and then ataxic gait with unsteadiness while walking. Plaintiff was cautioned several

14

times about the risks of falling, and to exercise caution with ambulation and postural/body position changes. There is even a specific direction from the neurologist for Plaintiff to avoid prolonged standing.

The ALJ states that one might expect to see some indication in the treatment records of restriction placed on the claimant by the treating doctor, but there were none. The Acting Commissioner likewise argues that Plaintiff exhibited normal gait in every other examination in the record except for one. (ECF No. 20 at 6:21, 21:15-16.) This is contrary to the evidence. The ALJ and the Acting Commissioner seemingly ignore Dr. Evangelista's findings: on March 29, 2016, that Plaintiff had ataxia and should exercise caution with ambulation and postural/body position changes; on April 29, 2016, that he had muscle spasms in the calf and should refrain from putting stress or strain on the cervical or lumbar region; on October 7, 2016, that Plaintiff had mild leg spasticity and an ataxic gait, fatigue, leg weakness, and muscle spasm and discussed fall risk/avoidance with Plaintiff; on March 7, 2017, that there was ataxia in the lower limbs and unsteadiness when walking.

The Acting Commissioner also asserts that Plaintiff does not explain how having a slow gait or mild difficulty shifting positions would reduce the ability to stand or walk. (ECF No. 20 at 19-20.) It appears to the court, however, that these things are directly correlated with the ability to stand or walk, and certainly the consistent findings of ataxic gait later in the record have a bearing on his ability to stand and walk.

Contrary to the ALJ's assertion, the longitudinal record is in fact supportive of Dr. Adrian's opinion that Plaintiff could only stand/walk for two hours in an eight-hour workday. This is also consistent with the opinion of Dr. Nalini Tella in April of 2013.

In sum, the court finds the ALJ erred in rejecting Dr. Adrian's stand/walk opinion. The court will now decide whether this matter should be remanded for further proceedings or for the payment of benefits.

**C. Remand for Further Proceedings or for Calculation and Award of Benefits**

Plaintiff argues that Dr. Adrian's opinion should be credited and he should be awarded benefits. Plaintiff asserts that if Plaintiff is limited to standing for two hours in an eight-hour workday, he is limited to sedentary work. By the time of the hearing, he was 51 years old, and is deemed disabled under the Grids, 20 C.F.R. § 404, subpart P, Appendix, Rule 201.14.

The Acting Commissioner does not assert an argument as to whether the matter should be remanded for further proceedings or for the calculation and award of benefits.

The court, after reviewing an action challenging the final decision of the Commissioner of Social Security, has the "power to enter, upon pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, *with or without remanding the cause for a rehearing*." 42 U.S.C. § 405(g) (emphasis added). Thus, "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits." *Garrison*, 759 F.3d at 1019 (citing cases from every circuit).

The Ninth Circuit discussed the scope of this power in *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396 (9th Cir. 1988) (*Varney II*). It was in that case that the Ninth Circuit announced the "credit-as-true" rule, holding:

> [W]here there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings

> regarding that testimony. Rather, we will … take that testimony to be established as true.

*Id.* at 1401. The following year, the Ninth Circuit held that the credit-as-true rule also applies to medical opinion evidence. *See Hammock v. Bowen*, 879 F.2d 498 (9th Cir. 1989).

In subsequent years, the Ninth Circuit developed a three-part standard to satisfy the credit-as-true rule before a court may remand with instructions to calculate and award benefits. Courts must consider: (1) "whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion[;]" (2) "whether there are outstanding issues that must be resolved before a disability determination can be made, … and whether further administrative proceedings would be useful[;]" and (3) "[w]hen these first two conditions are satisfied, we then credit the discredited testimony as true for purposes of determining whether, on the record as a whole, there is no doubt as to disability." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (internal quotation marks and citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100-1101 (9th Cir. 2014) (citations omitted); *Garrison*, 759 F.3d at 1020 (citations omitted).

In *Garrison*, the Ninth Circuit reiterated its prior conclusion that the "credit-as-true rule may not be dispositive of the remand question in all cases." *Id.* Instead, the rule "envisions 'some flexibility.'" *Id.* (citation omitted). Noting that the court had not yet exercised such flexibility or clarified the scope of flexibility, the court addressed that issue in *Garrison*. The Ninth Circuit explained the flexibility as follows: even if all the conditions of the credit-as-true standard are satisfied, remand for calculation and award of benefits is not appropriate if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021. The court described this interpretation of flexibility as aligning the rule with "the basic requirement that a claimant be disabled in order to receive benefits." *Id.* The Ninth Circuit described it in subsequent

cases as having the court consider "whether the record taken as a whole, leaves not the slightest uncertainty as to the outcome of [the] proceeding." *Treichler*, 775 F.3d at 1101 (citation and quotation marks omitted); *see also Leon*, 880 F.3d at 1044 (citations omitted).

In *Garrison*, the Ninth Circuit found that the district court's remand for further proceedings was improper where the claimant satisfied all components of the credit-as-true standard and there was nothing in the record to suggest that the claimant was not in fact disabled. *Id.*

The Ninth Circuit addressed the credit-as-true rule again later that year in *Treichler*, and then in 2017 in *Leon v. Berryhill*. In *Treichler* and *Leon*, the Ninth Circuit confirmed that the exercise of authority to remand for calculation and award of benefits is discretionary and should be a rare departure from the ordinary remand rule. *Leon*, 880 F.3d at 1045; *Treichler*, 775 F.3d at 1100, 1102 , 1103 (citations omitted). *Leon* also clarified that even when all of the credit-as-true rule's conditions have been satisfied, remand for an immediate award of benefits is not required. *Leon*, 880 F.3d at 1045. In *Treichler*, the Ninth Circuit found that there were significant factual conflicts between the claimant's testimony and the medical evidence and so the case should be remanded for further proceedings. *Id.* at 1104-05.

The court will now address whether Plaintiff satisfies the components of the credit-as-true standard, and whether there is anything in the record as a whole that suggests Plaintiff is not in fact disabled.

The first component of the credit-as-true standard is obviously satisfied since the court concluded that the ALJ erred in failing to provide legally sufficient reasons for rejecting the two-hour stand/walk limitation of Dr. Adrian.

Next, the court must consider whether the record has been fully developed and whether further administrative proceedings would serve a useful purpose. "Administrative proceedings are

generally useful where the record has [not] been fully developed, …there is a need to resolve conflicts and ambiguities, …, or the presentation of further evidence … may well prove enlightening' in light of the passage of time[.]" *Treichler*, 775 F.3d at 1101 (internal citations and quotation marks omitted).

The Ninth Circuit has stressed that precedent "foreclose[s] the argument that a remand for the purpose of allowing the ALJ to have a mulligan [to revisit the medical opinions and testimony that were improperly rejected] qualifies as a remand for a 'useful purpose' under the … credit-as-true analysis." *Garrison*, 759 F.3d at 1021-22 (citations omitted).

In this case, the evidence regarding Plaintiff's ability to sit/stand in an eight-hour workday is critical because if Plaintiff is as limited in this regard as Dr. Adrian contends then he should be found disabled under the Grids.

The medical records are clear that Plaintiff suffered from progressively worsening pain in his cervical and lumbar spine as well as fatigue, leg weakness, numbness in the feet and toes, muscle spasms, and an ataxic gait. The findings regarding his gait were consistent in Dr. Evangelista's treatment notes between March of 2016 and March of 2017.

While the ALJ mentions previous medication noncompliance in her decision, Plaintiff experienced these progressive symptoms all while being compliant with his medications, including Copaxone injections, Baclofen and Gabapentin. Insofar as the Acting Commissioner argues that Plaintiff's imaging does not suggest he is disabled, the latest MRI results showed that while his MS lesions were stable and non-enhancing, the cervical spine had multiple areas of increased signal intensity in the cord, cervical spondylosis, multilevel degenerative changes, degenerative disc changes, disc space narrowing, disc osteophyte complexes and disc bulges with central canal narrowing and foraminal narrowing at multiple levels. (AR 373-374.)

The court will now look at whether Plaintiff's own testimony presents any question as to his disability. The ALJ acknowledged Plaintiff's claim of difficulty standing and walking, and then stated that the objective findings do not provide strong support for his allegations of disabling symptoms and limitations. (AR 20-21.)

The ALJ's conclusions regarding the objective medical evidence were discussed above with respect to Dr. Adrian's stand/walk limitation, and need not be repeated here as the court already found that the longitudinal medical evidence does support such a limitation. The ALJ also stated that Plaintiff admits to certain abilities which provide support for the RFC adopted by the ALJ including taking care of his wife, driving her to doctor's appointments, taking a cousin to and from school, feeding a pet, going outside and driving. The ALJ did not specifically discuss how any of these activities reflect on his ability to stand or walk in a workday. Plaintiff testified that he had to stop working as a blackjack dealer because of his back. He said he could hardly stand up for long periods of time, which is required for a blackjack dealer. (AR 37.) He testified that his wife prepares the meals, does the dishes, does vacuuming, sweeping and laundry. While he takes her to the grocery store, his wife does the shopping. (AR 39.) His daughters take care of their family pet. (AR 40.) He testified that has balance issues when he tries to walk and his legs get very tired. He also suffers from weakness in his legs and back. (AR 41.) When he watches television he does so in a position that is almost lying down due to his back and legs. (AR 42.)

Plaintiff's testimony, that which the ALJ discussed and that described above that the ALJ did not discuss, supports Plaintiff's claims related to his ability to stand and walk.

Therefore, the court does not find that there are any remaining conflicts or ambiguities that need to be resolved or developed with respect to this issue. Nor does the court find that further testimony would prove enlightening at this point.

Finally, nothing in the record suggests that Plaintiff is not in fact disabled. If the two-hour stand/walk limitation of Dr. Adrian is credited, Plaintiff is limited to sedentary work. *See* 20 C.F.R. § 404.1567; SSR 83-10, 1983 WL 31251 ("the full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday."). The VE testified Plaintiff performed his past relevant work as a blackjack dealer at the light level, and the ALJ adopted a light work RFC. With Dr. Adrian's limitation, Plaintiff would not be able to perform work at the light level.

The Acting Commissioner does not dispute that if Plaintiff is limited to sedentary work, then given his age at the time of the hearing and other factors he would be found disabled at step five under the Grids, 20 C.F.R. § 404, Subpart P, Appendix 2, Rule 201.14. Therefore, this matter should be remanded for the calculation and award of benefits.

## IV. CONCLUSION

**IT IS HEREBY ORDERED:**

(1)     Plaintiff's motion to remand is **GRANTED**;

(2)     The Acting Commissioner's cross-motion to affirm is **DENIED**;

(3)     This matter is **REMANDED FOR THE CALCULATION AND AWARD OF BENEFITS** consistent with this Order; and

(4)     The Clerk shall enter judgment accordingly.

Dated: March 16, 2020.

_William G. Cobb_
_____
William G. Cobb
United States Magistrate Judge